## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MAGGIE R. ANDREWS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:20-00194-N |
| | ) | |
| ANDREW M. SAUL, | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maggie R. Andrews brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 12, 13) and those portions of the transcript of the administrative record (Doc. 11) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

due to be **AFFIRMED**.[2]

## I.  *Procedural Background*

Andrews filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on March 6, 2017. After they were initially denied, Andrews requested, and on December 19, 2018, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On March 28, 2019, the ALJ issued an unfavorable decision on Andrews's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 11, PageID.54-66).

The Commissioner's decision on Andrews's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on February 4, 2020. (*Id.*, PageID.46-50). Andrews subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 15, 16).

decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide

the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022,

1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

of all the relevant facts.").[4]

---

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of*

---

record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

*Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases

upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is under a disability, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), which means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

---

printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an

onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied

review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Andrews met the applicable insured status requirements through December 31, 2021, and that she had not engaged in substantial gainful activity since the alleged disability onset date of February 5, 2017.[7] (Doc. 11, PageID.59). At Step Two,[8] the ALJ determined that Andrews had the following severe impairments: hypertension, lung problems, back disorder, headaches, and obesity. (Doc. 11, PageID.59-61). At Step Three,[9] the ALJ found that Andrews did not have an impairment or combination of impairments that met or

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11, PageID.61).

At Step Four,[10] the ALJ determined that Andrews had the residual functional capacity (RFC) "to perform a full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[[11]] with no other limitations." (Doc. 11, PageID.61-64).

---

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11]"To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations …

Based on the RFC, the ALJ determined that Andrews could perform past relevant work as a painter and mental retardation aide. (Doc. 11, PageID.64-65). However, as an alternative finding, the ALJ proceeded to Step Five and, after considering testimony from a vocational expert,[12] found that there existed a significant number of jobs in the national economy as a hand packager, sandwich maker, and kitchen helper that Andrews could also perform given her RFC, age, education, and work experience. (Doc. 11, PageID.65-66). Thus, the ALJ found that Andrews was not disabled under the Social Security Act. (*Id.*, PageID.66).

## IV. *Analysis*

Andrews's sole claim of reversible error is that the ALJ did not fully consider the report of consultative examining psychologist Thomas Bennett, Ph.D., in finding that she had a severe mental impairment at Step Two. The undersigned disagrees.

At Step Two, the ALJ found that Andrews had medically determinable

---

Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

[12] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

mental impairments of personality disorder, somatic disorder, and depression, but determined that, "considered singly and in combination," they "do not cause more than minimal limitation in [Andrews]'s ability to perform basic mental activities and are therefore nonsevere." (Doc. 11, PageID.59). *See* 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). In making this determination, the ALJ utilized the special technique required by 20 C.F.R. §§ 404.1520a and 416.920a. Under that technique, once an ALJ determines that a claimant has medically determinable mental impairments, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)…" *Id.* §§ 404.1520a(b), 416.920a(b).

There are "four broad functional areas in which [the Commissioner] will rate the degree of [a claimant's] functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). These functional areas are often referred to as the "paragraph B" criteria, a name derived from how they are indexed in the Listing of Impairments from which they are drawn. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1136 (11th Cir. 2021) ("In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria."). When the Commissioner "rate[s a claimant's] degree of limitation in these areas … , [the

Commissioner] will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the Commissioner "rate[s] the degrees of … limitation as 'none' or 'mild,' [the Commissioner] will generally conclude that [the claimant's mental] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities…" *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ determined that Andrews only had mild limitation in each of the paragraph B criteria, and therefore that her medically determinable impairments were nonsevere. (*See* Doc. 11, PageID.60-61). In conducting this analysis, the ALJ relied significantly on, and gave great weight to, the reports of Dr. Bennett, who conducted consultative examinations of Andrews on September 8, 2009 (*see id.*, PageID.296-299), and May 9, 2017 (*see id.*, PageID.375-379). Dr. Bennett gave the following assessment of Andrews in his 2017 report:[13]

> Overall, Ms. Andrews is a woman who has multiple medical complaints. She shows signs of chronic characterological disturbance. It is assumed that her emotional issues play a role in her physical complaints. She can manage her financial benefits at a simplistic level. No formal testing was done, but her effort to participate in the evaluation was adequate. Her activities and interests are quite constricted. Her ability to relate to others is mildly impaired. Her ability to function independently is mildly impaired. Her ability to understand and carry out instructions is average. Her ability to respond appropriately to supervisors and coworkers would be average if she were motivated to do so. She would probably respond to work pressures with increased physical complaints.

---

[13] Andrews makes no argument regarding Dr. Bennett's 2009 report.

(Doc. 11, PageID.378).

In finding that Andrews had mild limitation in the area of understanding, remembering, or applying information, the ALJ noted Dr. Bennett's finding that Andrews's "ability to understand and carry out instructions is average…" In finding mild limitation in the area of interacting with others, the ALJ noted Dr. Bennett's finding that Andrews's "ability to relate to others is mildly impaired[,]" and that "her ability to respond appropriately to supervisors and coworkers would be average if she were motivated to do so" (suggesting that any limitation in responding appropriately to supervisor's and coworkers was more a result of Andrews's lack of desire to do so, rather than any medical impairment). In finding mild limitation in concentrating, persisting, or maintaining pace, the ALJ noted Dr. Bennett's finding that Andrews's "ability to function independently is mildly impaired," as well as his determination that Andrews's long-term memory and abstract reasoning skills appeared mildly impaired, while her short-term memory appeared average. Finally, in the area of adapting or managing oneself, the ALJ cited to Dr. Bennett's notations that Andrews "takes care of her own activities of daily living, performs her own personal hygiene, and is able to prepare simple meals…" (Doc. 11, PageID.60).

The ALJ also considered and gave great weight to the medical opinion of the non-examining state agency reviewer Linda Duke, Ph.D., which the ALJ found "demonstrates [Andrews's] limitations for 'B' criteria … are no more than 'mild'

severity…" (Doc. 11, PageID.60).[14] The ALJ also noted that, other than Dr. Bennett's examinations—both of which were conducted for disability determinations—Andrews had "seen no mental health professionals." (Doc. 11, PageID.60). The undersigned finds that the foregoing constitute substantial evidence supporting the ALJ's determination of no severe mental impairment.

Andrews believes the ALJ acted inconsistently in, on the one hand, giving great weight to Dr. Bennett's examination and opinions while, on the other hand, finding "no severe mental impairments when Dr. Bennet clearly gave [Andrews] several diagnoses." (Doc. 12, PageID.502). However, a mere diagnosis is not sufficient to establish the existence of even a medically determinable impairment, let alone show a severe one. *See* 20 C.F.R. §§ 404.1521, 416.921 ("We will not use your statement of symptoms, *a diagnosis*, or a medical opinion to establish the existence of an impairment(s)." (emphasis added)); *Moore*, 405 F.3d at 1213 n.6 ("[T]he mere existence of … impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (' "severity" of a medically ascertained disability must be measured in terms of its effect upon ability to work').". Consistent with this authority, the ALJ explained that, "[d]espite the diagnoses issued by Dr. Bennett, his examination findings do not support there were psychological factors affecting [Andrews's] mental functioning to

---

[14] Andrews does not challenge that finding. Nevertheless, "[t]he opinions of nonexamining, reviewing physicians, … standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

the degree she cannot perform work-related activities." (Doc. 11, PageID.60).

Andrews also claims that the ALJ's finding of no severe mental impairment is inconsistent with Dr. Bennett's statements that Andrews's "activities and interests are quite constricted and that she could make significant improvements with appropriate mental health treatment." (Doc. 12, PageID.502). According to Andrews, if she "has significant improvements to be made, that indicates a severe problem." (*Id.*). However, Dr. Bennett's actual statement, that Andrews "*could probably* make significant improvement with appropriate mental health intervention" (Doc. 11, PageID.378 (emphasis)), was speculative in nature. Regardless, it is not inconsistent with the ALJ's finding that Andrews had only mild limitations in each of the paragraph B criteria, as "mild" still connotes some limiting effects that could leave room for improvement, even if they do not reach "severe" status for purposes of Step Two. As to the observation that Andrews's activities and interests are "quite constricted," Dr. Bennett did not explain what this observation meant in functional terms, and regardless, the fact that Andrews can point to a single sentence that cuts against the ALJ's decision does not mandate reversal. *See Ingram*, 496 F.3d at 1260 ("Even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision reached is supported by substantial evidence." (quotation omitted)).

Moreover, Andrews has failed to show that any error the ALJ may have committed in not finding a severe mental impairment is anything other than harmless. The Eleventh Circuit Court of Appeals has recognized that Step Two is

merely "a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). *See also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied…"). "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588. Therefore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (unpublished). An ALJ's harmless errors do not warrant reversal of a final decision, *see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), and the Eleventh Circuit has repeatedly held that any error in not finding additional severe impairments at Step Two is harmless, so long as the ALJ finds at least one,[15] and considers all of a

---

[15] *See e.g.*, *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F.

claimant's medically determinable impairments, both severe and non-severe, at the later steps of the sequential evaluation.[16] Nowhere does Andrews argue that the ALJ failed to do so, instead only making vague, unpersuasive assertions that the RFC may have been different if the ALJ had classified her mental impairments as

_____

App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (per curiam) (unpublished) ("[T]he finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly*, 382 F. App'x at 824–25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").

[16] *See Schink*, 935 F.3d at 1268 ("Our conclusion that substantial evidence does not support the ALJ's finding that Schink's mental impairments were non-severe … could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence. Here, though, the ALJ's RFC assessment was limited to Schink's physical abilities and impairments and erroneously omitted his mental ones. As a result, we cannot say that the erroneous finding of non-severity was harmless."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.").

severe rather than nonsevere.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Andrews's applications for benefits is therefore due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Andrews's March 6, 2017 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 28th day of June 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**